989 F.2d 499
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INMATES' COUNCILMATIC VOICE, Plaintiff,
Ronald C. Earley, et al., Intervenor Plaintiff-Appellees and
Cross-Appellants,
v.
Reginald A. WILKINSON, et al., Defendants-Appellants and
Cross-Appellees.
 Nos. 92-3218, 92-3275.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1993.
 
 Before: NELSON and BOGGS, Circuit Judges, and ROSENN, Senior Circuit Judge.[1]
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The dispositive question presented here is whether a declaratory judgment that arguably had an injunctive aspect could be enforced in contempt proceedings instituted by strangers to the litigation who complained of matters occurring almost a decade after the district court had terminated all jurisdiction of the action. We shall answer the question in the negative.
 
 
 2
 * This is a civil rights case that was commenced in 1972 by several alleged parole violators held in the Cuyahoga County Jail in Cleveland, Ohio, and by an unincorporated association representing the interests of the jail's inmates. The gravamen of the complaint was that the defendants, two of whom were officials of the Ohio Adult Parole Authority, had violated certain of the plaintiffs' due process rights in taking steps to revoke their parole. The rights in question were those enunciated by the Supreme Court in Morrissey v. Brewer, 408 U.S. 471 (1972). The plaintiffs sought declaratory and injunctive relief and class action certification.
 
 
 3
 In 1975, by which time the plaintiffs were no longer seeking injunctive relief or class certification, the district court entered a judgment declaring that the manner in which the defendants had been enforcing Ohio's parole revocation laws was unconstitutional. The judgment incorporated an exhibit containing a set of principles, some of which had been developed by stipulation of the parties, that were declared to "represent the minimum due process requirements which must be met in causing the revocation of parole ... after the date of this Order." One such principle, adopted over the objection of the defendants, was that when a parolee was being held pursuant to a detainer issued by an officer of the Parole Authority, and when it had been determined that there was probable cause to believe that the parolee had violated the conditions of his parole, the parolee would be given a full-scale parole revocation hearing within 60 days of the date of the placement of the detainer. The consequences of holding a hearing after the 60-day deadline were not specified; the order did not say, for example, that the parolee would automatically be returned to the streets in such a situation.[2]
 
 
 4
 The Parole Authority appealed from the portion of the judgment establishing the 60-day principle insofar as it applied to a parolee arrested in Ohio for committing a new crime. This court concluded that when a detainer was executed against a parolee who had been released on bond pending trial for a new crime, the parolee would be entitled to a final parole revocation hearing "within a reasonable time" after requesting such a hearing. Inmates' Councilmatic Voice v. Rogers, 541 F.2d 633, 635 (6th Cir.1976). We expressly declined to fix a specific time limit for conducting such a hearing, and we modified the district court's judgment accordingly. Id. Our opinion also took note of the fact that by the time of an earlier appeal to the Supreme Court in 1974, the plaintiffs were no longer seeking injunctive relief. Id. at n. 1.
 
 
 5
 The exhibit (captioned "stipulation") that was incorporated in the district court's 1975 judgment said that the court would retain "supervisory jurisdiction," as the court subsequently characterized it, for a period of one year from the date of the judgment.[3] In 1979, after the district court had approved several regulatory changes submitted to it by the Parole Authority, the court sua sponte entered an order referring to the stipulation on retention of jurisdiction, stating that there was no further necessity for the court to exercise continuing supervisory jurisdiction, and ordering that the court's continuing jurisdiction over the 1975 judgment be terminated.
 
 
 6
 In 1981 the defendants moved for an order "terminating any further jurisdiction of this action...." The plaintiff, through counsel, filed a response stating that it did not object to the district court's terminating jurisdiction over the action. The court thereupon ordered that the defendants' motion be granted and that "jurisdiction"--presumably meaning any further jurisdiction of the action--be terminated. No enforcement proceedings were pending at that time, and we have no reason to suppose that the purposes of the 1975 judgment had not been fully achieved.
 
 
 7
 The district court's docket sheet on this case reflects no further activity for more than nine years. In October of 1990, however, Ronald C. Earley and Eric L. Greene moved for permission to intervene as parties plaintiff, pursuant to Rule 71, Fed.R.Civ.P., for the purpose of seeking a civil contempt order against the current Chief of the Parole Authority and another official. The motion was based in part on a 1989 Parole Authority internal memorandum which indicated that the effect of holding revocation hearings more than 60 days after arrest would henceforth be analyzed under the two-part test set forth by the Ohio Supreme Court in Coleman v. Stobbs, 23 Ohio St.3d 137, 491 N.E.2d 1126 (1986).[4] Dismissal of parole violation charges was not to be automatic, the memorandum suggested, when the revocation hearing came more than 60 days after arrest; the charges could still be resolved against the parolee if his hearing were held within a reasonable time.
 
 
 8
 Affidavits accompanying the motion said that intervenor Earley had been incarcerated in the Franklin County Jail on technical (i.e., non-criminal) parole violation charges; that intervenor Greene had been incarcerated in the Clinton County Jail on similar charges; that each man had been given a parole revocation hearing more than 60 days after his arrest; and that parole had then been revoked, resulting in incarceration in a state penal institution. Neither man alleged that he had ever been an inmate in the Cuyahoga County Jail,[5] but they sought compensatory damages and other relief on behalf of all similarly situated parolees throughout the state of Ohio.
 
 
 9
 The defendants moved for dismissal on jurisdictional and other grounds, and the motion to dismiss was denied. A subsequent motion to modify the 1975 judgment was denied without comment on January 21, 1992. The district court then entered an order allowing Messrs. Earley, Greene and Kennedy to intervene as parties plaintiff; adjudging the defendants to be in civil contempt for violating the 60-day principle contained in the 1975 order; directing the defendants to rescind their 1989 policy retroactively; ordering restoration to parole of all parolees anywhere in the state who had received parole revocation hearings more than 60 days after their arrest on parole revocation charges and who had not been immediately released to parole; requiring the defendants to pay the intervenors' attorney fees and costs, but denying the claim for compensatory damages; and stating that the court would retain jurisdiction to enforce both this order and the 1975 order. Subsequent motions to alter or amend were denied, and the defendants appealed. The intervenors took a cross-appeal from the denial of a request for damages.
 
 II
 
 10
 There are several aspects of this case that we find troubling. If the district court had retained jurisdiction, for one thing, the failure of the court adequately to explain its denial of the defendants' motion to modify the 1975 judgment would have left us in doubt as to the propriety of that ruling. We have some question, moreover, as to whether the 1975 judgment ever had the effect of a state-wide injunction benefiting future alleged parole violators whose interests were not represented by plaintiff Inmates' Councilmatic.
 
 
 11
 Assuming arguendo that the 1975 judgment was tantamount to an injunction having state-wide application, however, it seems to us, on the unusual facts presented here, that the order entered by the district court in 1981 had the effect of dissolving the injunction. The "supervisory jurisdiction" pursuant to which the district court initially kept watch over changes in Ohio's parole revocation procedures was terminated no later than 1979, so the defendants' 1981 motion to terminate "any further jurisdiction" cannot logically have been confined to supervisory jurisdiction. Whenever a court enters an injunction it retains jurisdiction to enforce its order in the future, of course, but injunctions are not necessarily immortal--and here the express termination of any further jurisdiction, after supervisory jurisdiction had already been terminated, put an end to enforcement jurisdiction, along with putting an end to the injunction itself.
 
 
 12
 We are not unmindful of the fact that a district court can terminate supervision of a lawsuit without vacating injunctive orders previously entered in the suit. See Dowell v. Board of Educ. of Oklahoma City Public Schools, 795 F.2d 1516, 1518 (10th Cir.), cert. denied, 479 U.S. 938 (1986); cf. Board of Educ. of Oklahoma City Public Schools v. Dowell, 111 S.Ct. 630, 635 (1991). The injunction in the case at bar clearly survived the termination of supervisory jurisdiction in 1979. Had the plaintiff asserted that a violation occurred at any point between 1979 and 1981, the district court could doubtless have entertained contempt proceedings. And if claims of a violation had been pending in 1981, the district court could not have closed the case without addressing them. See Youngblood v. Dalzell, 925 F.2d 954, 958 (6th Cir.1991); United States v. City of Cincinnati, 771 F.2d 161, 168-69 (6th Cir.1985).
 
 
 13
 No claims of violation were pending in this case when jurisdiction was terminated in 1981, however, and, as we have seen, it was not merely supervisory jurisdiction that was terminated at that time. The defendants moved the district court to terminate "any further jurisdiction," and that is precisely what the court did. It is true that the brief accompanyying the defendants' motion focused on supervisory matters, but the fact remains that the district court terminated all jurisdiction--including, in our view, enforcement jurisdiction.
 
 
 14
 The termination of enforcement jurisdiction is not necessarily irreversible. See Picon v. Morris, 933 F.2d 660 (8th Cir.1991), where a district court was held to have abused its discretion in denying a motion filed under Rule 60(b), Fed.R.Civ.P., to resume jurisdiction of a class action relating to conditions of confinement at a correctional center in Missouri. The moving party in that case, one Barry McBride, had been housed in the center at a time when the center's use of certain emergency segregation cells was governed by a consent decree. Mr. McBride did not know of the consent decree until after it had been dissolved, but in filing his Rule 60(b) motion (which he did within one year of the dissolution of the decree) he contended that the defendants had been violating the decree in respect of the segregation cells, to his detriment, during the time when the decree remained in force.
 
 
 15
 The situation presented in the case at bar bears little resemblance to that in Picon v. Morris. There is no contention here of any violation occurring prior to the district court's termination of all jurisdiction in 1981. The actions complained of stem from a policy change that was not adopted until 1989--and the new policy, which seems reasonable to us, was not applied to the intervening plaintiffs until 1990. It would be grossly inequitable, in our view, for the courts to resurrect the 1975 judgment after all these years and hold the defendants in contempt for violating an injunction that had been vacated many years before.
 
 
 16
 The order permitting intervention and adjudging the defendants to be in civil contempt is REVERSED. The intervenors' cross-appeal is DISMISSED.
 
 
 
 [1]
 The Honorable Max Rosenn, Senior Circuit Judge for the Third Circuit, sitting by designation
 
 
 [2]
 But see Ohio Rev.Code § 2967.15, adopted in 1965, which says among other things that "[i]n the event the [parole] authority fails to make a determination of the case of the parolee alleged to be a violator of the conditions of his ... parole within a reasonable time such parolee shall be released from custody...." (Emphasis supplied.)
 
 
 [3]
 It was stipulated that the one-year retention of supervisory jurisdiction would not alter or diminish the court's power to enforce its orders. The stipulation also provided for dismissal of a class action motion filed by the plaintiffs and dismissal of the individual claims of parolees who had been named as plaintiffs. It was further stipulated that "[t]his action is properly maintained by plaintiff Inmate [sic] Councilmatic Voice, an unincorprated association representing the interests of the inmates of the Cuyahoga County Jail."
 
 
 [4]
 The Supreme Court's syllabus in Coleman v. Stobbs reads as follows:
 "A court should apply a two-part test in determining whether the delay of the Adult Parole Authority, in not commencing a final parole revocation hearing, entitles an alleged parole violator to habeas corpus relief. First, it must be determined that any delay was unreasonable. Second, if the delay is found to be unreasonable, it must be determined whether the delay somehow prejudiced the alleged parole violator."
 
 
 [5]
 In a supplemental motion, Thomas G. Kennedy, Jr. also sought permission to intervene. Mr. Kennedy filed an affidavit stating that he had been incarcerated in the Stark County Jail on technical parole violation charges; that he had been given a parole violation hearing more than 60 days after his arrest; that his parole had been revoked; and that he had been incarcerated in a state penal institution as a result. It appears that Mr. Kennedy's revocation hearing came 61 days after his arrest. Mr. Earley's hearing was held 63 days after his arrest, according to the defendants, while Mr. Greene's was held 71 days after his arrest. The defendants argued that Earley and Greene were partially responsible for these delays